CRIBBEN & SEXTON CO. et al. v. NORTH END HOUSE FURNISHING CO.†

(Circuit Court of Appeals, Eighth Circuit. March 25, 1915.)

No. 4251.

BANKRUPTCY ⊛91—ACTS OF BANKRUPTCY—FRAUDULENT TRANSFER OF PROPERTY.

 Evidence considered, and held to sustain the allegations in a petition in involuntary bankruptcy of acts of bankruptcy by transferring property with intent to hinder, delay, and defraud creditors.

 [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. ⊛91.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

In the matter of the North End House Furnishing Company, alleged bankrupt. From an order dismissing their petition, the Cribben & Sexton Company and others, petitioning creditors, appeal. Reversed.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
† Rehearing denied June 16, 1915.

Lee W. Grant, of St. Louis, Mo. (Wilbur H. Close, of St. Louis, Mo., on the brief), for appellants.

William Zachritz and Hugh D. McCorkle, both of St. Louis, Mo. (Edgar F. Zachritz, of St. Louis, Mo., on the brief), for appellee.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. This is an appeal from a judgment dismissing an involuntary petition in bankruptcy. Appellants filed the petition against appellees March 8, 1913, and alleged among other acts of bankruptcy the following:

"Your petitioners further state that the said North End House Furnishing Company committed an act or acts of bankruptcy, in that, beginning with January 29, 1913, until the date of the filing of the petition herein, the said North End House Furnishing Company from time to time transferred and conveyed a part of its property with intent to hinder, delay, or defraud its creditors, or some of them, in that during all of said period it turned over to one Samuel Gibstine, as fast as the same was collected, all cash received by it, being both cash collected from accounts and bills receivable and cash derived from cash sales, and that said sums so transferred from day to day were turned over to the said Gibstine with intent to hinder, delay, or defraud its creditors; that the exact amount so transferred is unknown to your petitioners, for the reason that the said North End House Furnishing Company did not keep correct books of account and has destroyed the cash book kept by it during said period; that your petitioners state that the amount so transferred with intent to hinder, delay, or defraud its creditors exceeds the sum of five hundred dollars ($500.00). Your petitioners further state that the said North End House Furnishing Company committed a further act of bankruptcy, in that it did convey and transfer part of its property with intent to hinder, delay, or defraud its creditors, on or about the 5th day of February, 1913, in that it did on or about said date transfer and convey to the Diamond Investment Company certain bills receivable, secured by mortgage, owned by it, said bills receivable being executed by the following persons and in the following amounts, to wit:

| | |
|---|---|
| Joseph Murphy | $241.60 |
| Joseph Bequerst | 115.50 |
| J. P. Smith | 30.00 |
| Jos. Vittitoe | 44.50 |
| Oscar Strasmer | 47.50 |
| Fred Schneeman | 30.80 |
| L. Nagel | 78.00 |
| William Dietrichs | 50.00 |
| Paul Nordgens | 22.00 |
| J. Frail | 28.00 |
| Geo. Schmitz | 40.50 |
| Harry L. Kellar | 20.00 |
| J. Moore | 98.00 |
| J. M. Wolff | 28.00 |
| H. Seib | 36.00 |
| John Mehl | 50.12 |
| Howard T. Smith | 20.00 |
| L. Berman | 12.75 |
| Minsterman | 9.50 |
| C. Smith | 7.00 |
| Frank Block | 13.90 |
| Anton Spitz | 7.05 |
| Gus Schlueter | 7.57 |
| Geo. Harig | 4.60 |
| Geo. Rodemeyer | 9.20 |

Peter Heitman......................................................$ 17.00
Wm. Pohlman...................................................... 12.00
Augustus Martin.................................................. 19.00
Theodore Callis.................................................. 4.00
L. Breuer....................................................... 19.00
E. Berns........................................................ 3.00
Elizabeth Meyer................................................. 43.25
Mary Gevers..................................................... 54.10
H. F. Kruse..................................................... 20.00
J. B. Viekery................................................... 40.00

"That said transfer was made by it with intent to hinder, delay, or defraud its creditors, and was without consideration."

A receiver was appointed, and the stock of merchandise belonging to appellee was sold for $798.57. Appellee answered the petition, and the issues thus raised were referred to a master, who made a report recommending the dismissal of the petition. The report was confirmed, and petition dismissed. The master reported with reference to the above alleged acts of bankruptcy as follows:

"In the opinion of the special master, the evidence does not justify him in finding that the respondent transferred any of its money to Gibstine with the intent on its part to hinder, delay, or defraud its creditors. The argument made on behalf of the petitioning creditors in support of this act of bankruptcy consists of a series of assumptions and conjectures, and although the evidence is perhaps sufficient to raise a suspicion that Gibstine did not account for all the money of the company received by him, the special master thinks that the petitioners have failed to sustain this act of bankruptcy by a preponderance of the evidence. The charge that the transfer of the company's notes to the Diamond Investment Company was without consideration, and was made with intent to hinder, delay, or defraud its creditors, is not sustained by the evidence. The evidence shows that the notes in question were pledged to the Diamond Investment Company as security for a loan made to the respondent company. There is no evidence warranting the conclusion that the transaction was without consideration, or that it was made with the intent alleged in the petition."

We think the master and the court erred in so finding. The evidence in the record with reference to these alleged acts of bankruptcy is substantially as follows: Appellee was a corporation doing business in St. Louis, Mo., on the time payment plan. At the time the petition was filed Samuel Gibstine owned a majority of the stock of the corporation, and H. F. Hartnagel owned the balance. Gibstine alone contests the involuntary petition. He became interested in the corporation about January 27, 1913, by purchasing a majority of the stock. Early in January, 1913, the corporation employed a Mr. Umbreit to make an audit of its affairs. The audit showed merchandise on hand of about $2,900 or $3,000; stock, cash, and outstanding accounts, $4,900. The liabilities for merchandise amounted to $3,000. Gibstine testifies to a somewhat smaller value of merchandise when he took possession, but his valuation was simply an estimate. Prior to the time that Gibstine assumed control of the corporation a ledger was kept, in which were entered all sales made on credit. There were also kept order slips, or sales slips, on which was entered each sale, and which constituted the original record entry of each sale, and the number of these order slips was also entered in the ledger opposite each charge item. There was also kept a cashbook, in which was entered all cash

items including collections and cash sales. There was also kept a bank account at the Bremen Bank, where all moneys belonging to the corporation were deposited. The corporation paid its debts fairly well. After Gibstine secured control of the corporation it failed to enter all credit sales in the ledger; it ceased to enter in the ledger opposite the charge items the number of the order slips; it ceased to deposit its money in bank, but all moneys received, either from collections or from cash sales, were turned over to Gibstine. Gibstine kept no account of the moneys turned over to himself, and the books of the corporation show no record of these moneys. A few days after Gibstine took charged he pledged with the Diamond Investment Company, owned by his wife, mortgages of the corporation amounting to $1,300 to secure an alleged loan of $500. The check for this $500 was handed by Gibstine to Tiekmeier, who seems to have been the treasurer of the corporation. Tiekmeier indorsed it in the name of the corporation and handed it back to Gibstine, and Gibstine collected the money on it. Gibstine testifies that the $500 borrowed from the Diamond Investment Company was used to run the business and pay current expenses, but just what expenses it paid does not clearly appear. After January 27, 1913, the corporation paid none of its indebtedness. Between February 4th, and February 24th, about nine suits for sums aggregating $735.60 were filed against it. Up to the time the receiver took possession on March 10 or 12, 1913, the business of the corporation went on as usual, so far as sales of merchandise were concerned.

Hilkerbaumer testifies that, in a conversation had with McCorkle, Gibstine, and Hieger (the latter secretary of the company), they told him (Hilkerbaumer) that during the month of February alone they had made sales aggregating $1,200. Tiekmeier testifies that the profits on sales were not less than 100 per cent. The books of the corporation, however, show credit sales for January, February, and 11 days of March of only $587.23, and cash sales of only $43.60, which would be $569.17 less than they admitted had been sold in February alone. At the time of the bankruptcy the corporation owed a total of $3,500. When the receiver took charge, Gibstine turned over to him cash amounting to $14.75 and a few notes as all the property belonging to the corporation. Subsequently, after an examination had before the referee, other mortgages were turned over upon a second demand by the receiver.

It is impossible, of course, to ascertain the exact amount of money received from the business by Gibstine; but the evidence conclusively shows that he received a sufficient sum of money from the business under such circumstances to sustain the allegation in the petition that the corporation transferred a portion of its property between January 29, 1913, and the day of filing the petition, with intent to hinder, delay, and defraud its creditors. We also think the act of bankruptcy charged to have been committed on the 5th day of February, wherein $1,300 worth of bills receivable secured by mortgage were transferred to the Diamond Investment Company, is fully proven, and that said transfer was made with intent to hinder, delay, and defraud the creditors of the corporation.

The judgment of the court below should be reversed, and the case remanded, with instructions to enter judgment adjudging the corporation a bankrupt, and to thereafter proceed therein according to law.